UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RYAN DUFORT,

                             Plaintiff,

                    - against -

CITY OF NEW YORK, JOSEPH MAROTTA,
JAE SHIM, THOMAS CONFORTI,
WILLIAM SCHMITTGALL, RICHARD A.
BROWN, PATRICK O'CONNOR, MICHAEL
VOZZO, AND JOHN DOE DEFENDANTS 1-10,

                            Defendants.
-----------------------------------------------------------X

MEMORANDUM
AND ORDER
12-CV-2283 (SMG)

GOLD, STEVEN M., U.S.M.J.:

## INTRODUCTION

Plaintiff Ryan Dufort brings this action pursuant to 42 U.S.C. § 1983 and state law asserting that his rights were violated when he was arrested and prosecuted for murder, manslaughter, and assault. Complaint ("Compl."), Docket Entry 1. Although he originally asserted claims against Queens District Attorney Brown and Assistant District Attorneys O'Connor and Vozzo, he has since withdrawn each of his claims against these defendants and certain causes of action asserted against the other defendants who remain.[1] Plaintiff's pending causes of action are brought against four New York City police officers and the City of New York, and principally assert claims for false arrest, malicious prosecution, and denial of due process and a fair trial.

---
[1] Pl. Mem. in Opp. to Summ. J., Docket Entry 66, at 22.

Defendants now move for summary judgment. The parties have consented to the assignment of this case to a United States Magistrate Judge for all purposes. Docket Entry 37. For the reasons stated below, defendants' motion for summary judgment is granted in its entirety.

**FACTS**

The following facts are construed in the light most favorable to Dufort, the non-moving party, and they are derived primarily from the parties' Local Rule 56.1 statements.[2] *See* Pl. R. 56.1, Docket Entry 67; Defs. R. 56.1, Docket Entry 65.

On the evening of October 7, 2006, plaintiff Dufort went to a karaoke bar in Queens with his friends Christopher Baez, Sebastian Yoon, Jeffrey Shih, and John Bae. Defs. R. 56.1 ¶¶ 1, 25, 35(a). Dufort was fifteen years old at the time and enrolled at Bayside High School as a freshman. Defs. R. 56.1 ¶ 24. When he arrived at the bar, Dufort was wearing a hooded maroon zip-up sweatshirt with the logo "American Eagle" written in white letters across the chest. Defs. R. 56.1 ¶ 15.

Before going to the bar, Dufort, Yoon, Baez, and Bae went to a construction site where they gathered pieces of pipe. Defs. R. 56.1 ¶ 48. Dufort brought a piece of pipe to the karaoke bar, concealed in his sweatshirt, because he had been told to bring something to defend himself "just in case." Defs. R. 56.1 ¶ 27. After arriving at the bar, Dufort and his friends joined a group of approximately twenty current and former Bayside High School students and friends of friends. Defs. R. 56.1 ¶ 26; *see* Pl. R. 56.1 ¶ 26.

At approximately 3:00 a.m. on the morning of October 8, 2006, Jung Hwa Lee, Hwa Young Park, Mink-ki Shin and In Hee Yoo went to the karaoke bar. Defs. R. 56.1 ¶ 6. As they

---

[2] The parties' respective submissions in support of and opposition to summary judgment are sequentially filed as docket entries 62-74. In addition to the parties' Rule 56.1 statements, the facts recited in the text are drawn from supporting material and exhibits from the Declaration of Elizabeth Norris Krasnow ("Krasnow Decl."), Docket Entry 64; the deposition of Hwa Young Park ("Park Dep."), Docket Entry 69-11; and the declaration of William F. Mackey, Jr. ("Mackey Decl."), Docket Entry 69-14. Unless otherwise noted, all facts drawn from the Defendants' Statement of Material Facts are undisputed.

attempted to leave around 3:50 a.m., Lee and Shin were assaulted by a group of males. Defs. R. 56.1 ¶ 7. Emergency Medical Services ("EMS") personnel arrived at the bar at approximately 4:06 a.m. and found Lee lying face down in a pool of blood. Defs. R. 56.1 ¶¶ 1-2. Lee was unconscious, unresponsive, and had no pulse. Defs. R. 56.1 ¶ 3. EMS personnel transported Lee to Flushing Hospital, where he was pronounced dead on arrival at 4:55 a.m. Defs. R. 56.1 ¶ 4. Shin was also injured, having sustained a head wound that required nine staples to close. Defs. R. 56.1 ¶ 8.

A New York City Police Department Sergeant from the 109th Precinct responded to Flushing Hospital at approximately 5:30 a.m. and spoke to Park, who identified herself as a witness to the assault on Lee. Defs. R. 56.1 ¶ 5. Park then went to the 109th Precinct where she viewed surveillance video from the karaoke bar with defendant Detective Joseph Marotta, who had already watched the video multiple times. Defs. R. 56.1 ¶¶ 9-10. The video captured the following areas: a street view of the entrance to the building where the bar was located, the exterior corridor leading to the entrance to the bar itself, the interior corridor leading to karaoke rooms, and part of the bar area. The portion of the karaoke bar where the assault occurred was not subject to video surveillance. Defs. R. 56.1 ¶¶ 11-12. Video recorded by the exterior corridor camera revealed Dufort approaching the entrance of the karaoke bar hours before the assault, gripping the pipe that was concealed under his sweatshirt, and later exiting the karaoke bar with nine or ten other individuals. Defs. R. 56.1 ¶¶ 16, 18; Pl. R. 56.1 ¶ 18. Video recorded by the interior corridor camera showed Dufort heading to the bar area with the pipe in one of the sleeves of his sweatshirt. Defs. R. 56.1 ¶ 17; Pl. R. 56.1 ¶ 17. The street view camera had footage of an individual in a red button-down shirt holding a bat, leaving the bar a few seconds after Dufort had exited. Defs. R. 56.1 ¶ 19.

Park told Detectives Marotta and Jae Shim that, during the assault on Lee, she saw only the back of the assailant's shirt. Pl. R. 56.1 ¶ 21. While viewing the surveillance video and accompanying still photographs, Park stated that she recognized Dufort's shirt to be the same color as the back of the assailant's shirt, and also acknowledged that she did not recognize Dufort by any facial or physical characteristics because she did not see his face during the assault. Pl. R. 56.1 ¶¶ 21, 36. Park stated that she saw the person wearing the shirt she recognized stomping on Lee and Shin during the barroom assault. Defs. R. 56.1 ¶ 14. Although Park further stated that she saw at least two people wearing red tops at the bar on the night of the assault, she reported that she was able to identify Dufort as the assailant because the other individual wearing a red top had very short, spiky hair, and Dufort did not. Defs. R. 56. 1 ¶ 22; *see* Pl. R. 56.1 ¶ 22; Park Dep. at 164-66.

David Han and Eric Kim were also at the bar on the night Lee was assaulted. Han and Kim were familiar with some of the people at the bar, and provided police officers with the names of certain individuals depicted in the surveillance video, including Dufort. Defs. R. 56.1 ¶ 28; *see* Krasnow Decl. Ex. E at 50-51.

On October 11, 2006, a few days after the assault, police detectives stopped Dufort outside of a 7-Eleven store. Defs. R. 56.1 ¶ 29. Dufort was handcuffed, taken to the 109th Precinct, and charged by Detective Marotta with murder in the second degree and gang assault in the first degree. Defs. R. 56.1 ¶¶ 30-31. Detectives Marotta and William Schmittgall interviewed Dufort in the presence of his parents, and Dufort stated the following: On the night of the assault, he went to the karaoke bar with friends and drank beer in one of the rooms. After an unknown male entered the room a few hours later, saying there was a fight, Dufort grabbed his sweatshirt and headed towards the exit. He saw that his friends had pipes and bats and were

4

hitting two Asian males. He stepped over one of the males on the floor and walked past the assault towards the exit. The next day he and his friends agreed not to mention to the police any names of individuals involved in the attack. Defs. R. 56.1 ¶¶ 34-35.

On October 12, 2006, Dufort was placed in a lineup in the presence of Detective Marotta, Lieutenant Thomas Conforti,[3] Assistant District Attorney Michael Vozzo, and William F. Mackey, Jr., Dufort's attorney. Defs. R. 56.1 ¶¶ 36, 38; Mackey Decl. ¶¶ 6-7. Dufort sat in the third chair and wore an unzipped maroon sweatshirt that was similar or identical to the one he was seen wearing in the surveillance video. Defs. R. 56.1 ¶ 37. No other individual in the lineup wore a maroon shirt. Pl. R. 56.1 ¶ 36. Six individuals, including Park, viewed the lineup. Although five individuals did not identify Dufort as someone involved, Park selected Dufort and stated that he participated in the assault. Mackey Decl. ¶¶ 8, 10; Defs. R. 56.1 ¶ 39. Park testified at her deposition in this case that, at the time of the lineup, she told the detectives and the assistant district attorney who were with her that she recognized Dufort from his clothing and not from his face. Park Dep. at 170:19–171:10, 176:3-177:22. Park further testified that she met with an assistant district attorney to prepare for testifying at trial, and reported at that time as well her concern that she could recognize Dufort only by his clothing and not his face. Park Dep. at 155:17-156:16. However, Mackey states that when Park viewed the lineup, she did not say in front of him that her selection was based only on the clothing the assailant was wearing during the assault. Mackey Decl. ¶ 11. Mackey further asserts that a detective from the 109th Precinct stated to him that the police knew Dufort was not involved in the assault, but wanted him to be a witness. Mackey Decl. ¶ 11. Based on the identifications made by Park and other

---

[3] The record is unclear as to whether Conforti is a Lieutenant or Captain. *Compare* Krasnow Decl. ¶ 1, *with* Defs. R. 56.1 ¶ 38.

5

witnesses, Dufort and nine individuals were charged with murdering Lee and assaulting Shin. Defs. R. 56.1 ¶ 40.

On January 30, January 31, and February 1, 2007, Assistant District Attorneys Michael Vozzo and Andrea Eckhardt presented evidence against Dufort and six others to a grand jury. Defs. R. 56.1 ¶ 41. Jonathan Putt appeared before the grand jury pursuant to a cooperation and plea agreement and testified to the following: On the night of the assault, he was in a private room at the karaoke bar with Dufort and others when Yoon entered and announced a fight had broken out. Yoon then grabbed a bag full of weapons and headed towards the fight, with Dufort, Putt, and others following. Individuals from the group used pipes to strike Lee and Shin, and Putt punched and tried to kick them. Lee and Shin were already on the ground when Putt left the karaoke bar with Dufort, Bae, and Michael Ii. Putt told the grand jury that he saw Dufort with a pipe, but testified at trial that he did not know where Dufort was during the assault. Defs. R. 56.1 ¶¶ 43(a)-(g); *see* Pl. R. 56.1 ¶ 43(e). Park also appeared before the grand jury, and testified that men pushed Lee and Shin to the ground, stomped on their bodies, and hit them with weapons including bottles and a bat. She also testified that during the assault at least one man was holding a pipe. Defs. R. 56.1 ¶ 44(b)-(d). No one specifically alleged that Dufort used a pipe during the assault. Pl. R. 56.1 ¶ 43(h).

On February 23, 2007, the grand jury indicted Dufort and the six others on charges including second degree murder, first degree manslaughter, and gang assault. Defs. R. 56.1 ¶ 45; Indictment, Docket Entry 64-15. Yoon pled guilty to manslaughter on November 28, 2007 and implicated five assailants during his plea allocution. Defs. R. 56.1 ¶ 46; Pl. R. 56.1 ¶ 47. With respect to Dufort, Yoon stated, "I think he punched." Pl. R. 56.1 ¶ 47; Yoon Plea Tr. at 15, Docket Entry 64-16.

The charges against Dufort, Baez, Bae, Aram Choi, and Il Park proceeded to trial in May of 2011. Defs. R. 56.1 ¶ 53. Park testified, albeit reluctantly, at the trial. Defs. R. 56.1 ¶ 54. The trial court ruled that the prosecution could attempt to elicit in-court identifications from Park, but only if it did so before showing her the surveillance video. Defs. R. 56.1 ¶ 56. After Park stated she could not identify Dufort in the courtroom, the prosecution played portions of the surveillance video, froze frames portraying each defendant, and asked Park whether she recognized the particular defendant pictured as someone who participated in the assault. Defs. R. 56.1 ¶ 58. When shown a freeze-frame of Dufort taken from the surveillance video, Park testified that she recognized him by his clothing but not his face, and described his behavior as "stomping on the victim." Defs. R. 56.1 ¶¶ 59-61. When Dufort's attorney cross-examined Park, she stated that she recognized some individuals by their faces and some, such as Dufort, by their clothing. Pl. R. 56.1 ¶ 69. The jury returned a verdict on June 5, 2011 and convicted all defendants except Dufort, who was acquitted. Defs. R. 56.1 ¶¶ 65-66.

## DISCUSSION

### A. Summary Judgment

Summary judgment is properly granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991). "The court 'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of

that party, and to eschew credibility assessments.'" *Perlman v. Fid. Brokerage Servs. LLC*, 932 F.Supp.2d 397, 406 (E.D.N.Y. 2013) (quoting *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir. 2004)). The moving party bears the initial burden of establishing that there are no genuine issues of material fact; if the movant meets that burden, the non-moving party must produce evidence of specific facts that raise a genuine issue for trial to avoid summary judgment. *Anderson*, 477 U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). Mere conclusory allegations are insufficient; "[t]here must be more than a 'scintilla of evidence'" to defeat a summary judgment motion. *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252).

**B. Plaintiff's Claim of Discrimination Pursuant to Section 1981**

Plaintiff's first cause of action is brought pursuant to 42 U.S.C. § 1981. Compl. ¶¶ 42-48. To prevail on a claim under Section 1981, a plaintiff must establish (1) that he "is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015) (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993)).

Defendants clearly argued for summary judgment on plaintiff's Section 1981 claim in their memorandum of law. Defs. Mem. at 13-14, Docket Entry 63. Plaintiff did not list his Section 1981 claim as among those he seeks to withdraw in his opposition memorandum. Pl. Mem. in Opp. to Summ. J. at 22-23. Plaintiff failed, however, to argue against summary judgment on this claim in his memorandum, or to point to any evidence in the record suggesting his arrest or prosecution was motivated by racial discrimination. Accordingly, defendants' motion for summary judgment on plaintiff's first cause of action is granted.

8

**C. Plaintiff's Section 1983 Claim for False Arrest and Unlawful Imprisonment**

Plaintiff brings various federal constitutional claims pursuant to 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan,* 443 U.S. 137, 145 n.3 (1979). To prevail on a claim under Section 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted).

Dufort first claims that he was falsely arrested and unlawfully imprisoned without probable cause. Compl. ¶¶ 50-51. To prevail on a false arrest claim, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (internal quotation marks and citation omitted); *see Jaegly v. Couch*, 439 F.3d 149, 151-52 (2d Cir. 2006) (noting that Section 1983 false arrest claims are governed by the law of the state in which the arrest occurred). There is no dispute in this case as to the first three elements; the only issue is whether Dufort's confinement was privileged.

An arrest is "privileged" when it is supported by probable cause. *Savino*, 331 F.3d at 76. Thus, a finding of probable cause is a complete defense to a false arrest claim. *Jaegly*, 439 F.3d at 152; *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Probable cause exists when an officer has "'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be

arrested.'" *Savino*, 331 F.3d at 76 (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . ." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Generally, incriminating information obtained from a victim or eyewitnesses is sufficient to establish probable cause, particularly when there are no facts that raise doubts about the person's veracity. *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citing *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)); *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001).

Dufort's arrest was supported by probable cause because an eyewitness, Park, identified him, by his clothing, as someone she saw stomping on victims Lee and Shin. There are no facts that raise serious doubts about Park's veracity. After the assault, police officers collected video recorded by surveillance cameras. Park reviewed the video and stated that she recognized Dufort by his red sweatshirt as someone involved in the assault. There is no indication that the police suspected Dufort at that point or in any way influenced Park's identification of him. Nor is there any evidence to suggest that Park knew Dufort before the night of the assault or had any reason to accuse him falsely.

Defendants have submitted the surveillance video and I have examined it. The surveillance footage is clear and the individuals depicted in it are plainly recognizable. The color of the clothing worn by the individuals depicted may be easily seen, at least in those areas covered by the surveillance cameras that are well-lit. Dufort does not deny that he is seen in the surveillance video, Pl. R. 56.1 ¶ 16, and that alone conclusively establishes that he was present at the time and place where Lee and Shin were assaulted. Nor does Dufort dispute that he can be seen in the video with a pipe hidden in the sleeve of his sweatshirt. Pl. R. 56.1 ¶¶ 16-17.

Although Park identified Dufort by virtue of the hooded red sweatshirt he was wearing and not by recognizing his face, the parties point to only one other person who can be seen in the videos wearing a red shirt, and Park was able to distinguish him from Dufort because of the type of shirt he was wearing and because of the other individual's short, spiky hair. These additional details enhance the reliability of Park's identification. Probable cause does not require that a witness or victim recognize a perpetrator's facial characteristics; at least one court has held that an identification was sufficient to establish probable cause even though it was made by a victim who reported that he could not see the perpetrator's face because it was covered by a hood. *Brunson v. City of New York*, No. 07-cv-2308(CBA), slip op. at 2, 13 (E.D.N.Y. Jan. 26, 2011).

Dufort challenges Park's lineup identification of him on the ground that he was wearing the same sweatshirt for the lineup that he wore on the night of the assault. Pl. Mem. in Opp. to Summ. J. at 4. Whether the lineup was suggestive or not, however, is of little moment, because Park had already identified Dufort from the surveillance video before selecting him from the participants in the lineup.

Taking all of the relevant circumstances into account, I conclude that Park's identification of Dufort, even if based upon recognizing his sweatshirt and not his face, provided the defendant officers with ample probable cause to arrest Dufort. Defendants' motion for summary judgment dismissing Dufort's false arrest claim is therefore granted.

**D. Plaintiff's Section 1983 and State Law Claims for Malicious Prosecution**

Dufort asserts claims under 42 U.S.C. § 1983 and New York State common law for malicious prosecution. The gravamen of these claims is Dufort's contention that the police officer defendants "misrepresented and falsified evidence," "did not make a complete and full statement of facts to the Court," and "withheld exculpatory evidence." Compl. ¶¶ 60-62.

11

Dufort also maintains that defendants lacked probable cause and acted with malice in initiating and continuing criminal proceedings against him. Compl. ¶¶ 64-65, 67-68, 109-10.

The elements required to establish a claim of malicious prosecution pursuant to Section 1983 are "substantially the same" as those under New York law. *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003) (internal quotation marks and citation omitted). To prevail on a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must show that his rights were violated under the Fourth Amendment and establish the elements of a state law claim, which are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks and citations omitted).

Plaintiff's malicious prosecution claims fail because, among other reasons, there was probable cause to commence the proceedings against Dufort and because there is no evidence that the officer defendants misrepresented or falsified evidence. As discussed above, there was probable cause for Dufort's arrest because Park identified him, after reviewing video surveillance recordings and based upon his clothing, as someone who stomped on Lee and Shin. Generally, probable cause at the time of arrest is sufficient to defeat a claim of malicious prosecution; "if probable cause existed at the time of the arrest and the plaintiff offers no additional facts to show that it dissipated post-arrest, then the claim for malicious prosecution cannot be maintained." *Jimenez v. City of New York*, 2016 WL 1092617, at *4 (E.D.N.Y. Mar. 21, 2016); *see Betts*, 751 F.3d at 82 (noting that "continuing probable cause is a complete defense to a constitutional claim of malicious prosecution"); *Carson v. Lewis*, 35 F.Supp.2d 250, 263 (E.D.N.Y. 1999).

The undisputed facts of this case demonstrate that the evidence against Dufort grew stronger, not weaker, as the police conducted their post-arrest investigation. Dufort was arrested a few days after the assault and acknowledged being at the karaoke bar when it occurred. He further acknowledged that there were people striking the victims with pipes and bats, and that these people were his friends. Finally, while he did not admit participating in the assault of Lee and Shin, Dufort admitted he stepped over one of them and walked past him to reach the exit of the bar.

Two participants in the assault provided additional evidence concerning Dufort. Jonathan Putt testified that he was with Dufort in a private room at the karaoke bar when Yoon entered and announced a fight had broken out. Yoon then grabbed a bag full of weapons and headed towards the fight, and Dufort was among those who followed him. Defs. R. 56.1 ¶¶ 42-43(a)-(c). Yoon later pled guilty and, during his allocution, stated that he thought Dufort was among the assailants who punched the victims. Defs. R. 56.1 ¶ 49. On October 11, 2006, just a few hours after Dufort was arrested, one of Dufort's friends, Tom Yoon ("Tom"), made statements to police officers. Tom told the officers that, approximately three weeks prior to the assault, Dufort tried to persuade Tom to join a gang known as "GS" by saying, among other things, "People don't fuck with you when you are in GS." Defs. R. 56.1 ¶¶ 32-33.

Moreover, a rebuttable presumption of probable cause arose when Dufort was indicted for the very same criminal activity for which he was arrested. An indictment by a grand jury gives rise to a presumption of probable cause that may be rebutted only with evidence that the indictment was procured by fraud, perjury, suppression of evidence, or other bad faith conduct by the police. *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013) (quoting *Manganiello*, 612 F.3d at 162). Dufort contends that the defendant police officers engaged in bad faith because

they did not inform the prosecutors handling Dufort's case that Park recognized Dufort only by his clothing and not his face. Pl.'s Mem in Opp. to Summ. J. at 5. The undisputed evidence, however, undermines this contention. When she was deposed in this action, Park was asked, apparently by Dufort's counsel, whether "it [is] fair to say that you also told whomever was there from the District Attorney's office meeting or interviewing you in 2006 that with regard to Ryan Dufort, you only could identify the color of his clothes and not his face," and Park responded, "yes." Park Dep. at 177.

Even when a plaintiff's rights have been violated by a law enforcement officer, "the chain of causation" between the officer's unlawful conduct and a subsequent prosecution "is broken by the intervening exercise of independent judgment" by the prosecutor, at least absent evidence that the officer misled the prosecutor. *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999). Here, plaintiff is unable to point to any evidence indicating that the defendant officers misled the prosecutors responsible for Dufort's case. To the contrary, the undisputed evidence is that the assistant district attorneys responsible for Dufort's prosecution were told by Park herself that she could recognize Dufort's clothes but not his face. The decision to prosecute Dufort was made by prosecutors after learning that information, and thus precludes any claim against the defendant police officers based upon the limited nature of Park's ability to recognize Dufort.

Dufort has submitted an affidavit from an attorney who defended him in his criminal case, William F. Mackey, Jr., in support of his opposition to defendants' motion. Mackey Decl. Mackey states in his affidavit that he was present on October 12, 2006, representing Dufort, when Park identified Dufort in a lineup. According to Mackey, Park did not at that time reveal that she was able to identify Dufort only because she recognized his clothing and could not

recognize his face. Although plaintiff suggests that Mackey's affidavit raises a question of fact, Pl. R. 56.1 ¶ 39, it does not. Park's attorney in this action specifically asked Park at her deposition what she "told *the police and the District Attorney* about the red clothing." Park Dep. at 177 (emphasis added). It does not appear from the excerpts of Park's testimony submitted by the parties that Park was ever asked whether Mackey, or anyone representing Dufort, was present when she spoke "about the red clothing." Accordingly, the fact that Mackey did not hear Park report that she could not recognize Dufort's face does not contradict Park's testimony that she acknowledged that fact to an assistant district attorney. It follows, then, that plaintiff has failed to raise a material question of fact with respect to whether the defendant police officers withheld any material information from the District Attorney's Office.

Plaintiff also suggests in his opposition to summary judgment that he seeks to depose the assistant district attorneys responsible for his prosecution. Pl. R. 56.1 ¶ 55. Although he nowhere clearly says so, plaintiff presumably seeks this discovery to learn whether the prosecutor will confirm or refute Park's testimony, and to argue that summary judgment should be denied because the testimony of the prosecutors may raise a dispute of fact about whether Park indeed revealed that she could not recognize Dufort's face. Plaintiff's stated intention to depose his prosecutors, though, is not a basis for denying defendants' summary judgment motion. First, plaintiff's argument is based on mere speculation about what the prosecutors might say. Second, plaintiff had ample opportunity to conduct the discovery he now seeks before opposing defendants' summary judgment motion. During a conference held on July 29, 2014, I set a briefing schedule calling for defendants to serve their motion by August 8, 2014, but not requiring plaintiff to submit his opposition until October 10, 2014, and inviting plaintiff to identify any discovery he required before submitting his opposition to defendants' motion.

15

Docket Entry 54. I later extended plaintiff's time to file his opposition first to December 5, 2014, then to January 19, 2015, and finally to February 3, 2015. Docket Entry 57; Order dated December 1, 2014, granting application filed as Docket Entry 58; Order dated January 15, 2015, granting application filed as Docket Entry 59. Nevertheless, even after receiving defendants' motion papers, plaintiff never identified or moved to compel any discovery he required before submitting his opposition.

Finally, to the extent plaintiff asserts a violation of his right to disclosure of exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), this claim also fails. Where, as here, plaintiff's criminal trial resulted in a verdict of acquittal, the verdict "'negates any violation of his *Brady* rights and extinguishes any Section 1983 due process claim that might arise from [defendants'] alleged suppression of exculpatory evidence.'" *Brunson*, slip op. at 22 (quoting *Ambrose v. City of New York*, 623 F.Supp.2d 454, 471 (S.D.N.Y. 2009)). Moreover, there was no violation of plaintiff's rights under *Brady* in this case. *Brady* requires only that exculpatory material be disclosed "in time for its effective use at trial." *United States v. Coppa*, 267 F.3d 132, 142 (2d. Cir. 2001). Park testified at Dufort's criminal trial and was shown Dufort's image in the surveillance video from the karaoke bar. Park was asked by the prosecutor on direct examination whether she recognized Dufort's face. Park responded, "not face but the clothing." Pl. Ex. J, Docket Entry 69-10, at 816:6-817:1. The attorneys representing Dufort at his criminal trial thus had ample opportunity to cross-examine Park about her inability to recognize Dufort's face. Accordingly, no *Brady* violation occurred.

### E. Plaintiff's Remaining Claims

Plaintiff, in addition to the claims described above, contends that he was deprived of his right to a fair trial and to substantive due process. Pl. Mem. in Opp. to Summ. J. at 17-21. These

16

claims are premised on the same unsupported allegation that the defendant officers concealed the limited nature of Park's ability to recognize Dufort. Accordingly, defendants are entitled to summary judgment on these claims for the same reasons discussed above.

## CONCLUSION

For all the reasons stated above, defendants' motion for summary judgment is granted in its entirety. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
April 28, 2016

U:\smg current docs\dufort sj final.docx